MARÍA ROSA BUXÓ, demandante y recurrente, *v.* ÁLVAREZ & ZAVALA, INC., demandada y recurrida; MARÍA ROSA BUXÓ, demandante, *v.* ÁLVAREZ & ZAVALA, INC., demandada; RODRÍGUEZ PORTELA & CO., INC., interventora y recurrente, ESTADO LIBRE ASOCIADO DE PUERTO RICO (DEPARTAMENTO DEL TRABAJO, NEGOCIADO DE SEGURIDAD DE EMPLEO), interventor y recurrido.

*Números:* R-75-18     *Resueltos:* 9 de marzo de 1976
R-75-19

*L. Morales Contreras* y *Rosario Morales Señeriz,* abogados de María Rosa Buxó; *Rafael L. Franco García,* abogado de Rodríguez Portela & Co., Inc.; *Jorge Soto Marrero, Ana L. López Vélez* y *Ovidio Quesada Santiago,* abogados del Negociado de

Seguridad de Empleo, Departamento del Trabajo, Estado Libre Asociado; Álvarez & Zavala, Inc., no compareció.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

■ Desde los albores del siglo que ya alcanza sus postrimerías, reconocimos en Puerto Rico que es hipoteca legal tácita la dimanante de "la contribución impuesta sobre la propiedad real del contribuyente o sea sobre los bienes inmuebles, [y] constituye un gravamen, lo que en el lenguaje jurídico significa una *verdadera carga real*, que pesa sobre los bienes cualquiera que sea su poseedor." *Sucesión Romero* v. *Willoughby*, 10 D.P.R. 71, 77 (1906) ; *Schroder* v. *Ayuntamiento de Mayagüez, et al,;* 7 D.P.R. 1, 5 (1904). Y en *Cueto* v. *Corte de Distrito*, 37 D.P.R. 244, 247–248 (1927) expusimos que "[p]or ser fundamento de la Ley Hipotecaria la publicidad y la especialidad de los gravámenes en la propiedad inmueble *quedaron suprimidos* por ella todos los gravámenes ocultos, quedando sólo como hipoteca tácita legal la preferencia que la misma ley en su artículo 218, enmendado en 1907, concede al Pueblo de Puerto Rico. . . ." Posteriormente reafirmamos dicha doctrina en *Riera* v. *Registrador*, 57 D.P.R. 673, 677–678 (1940).

■ Jurídica e históricamente esta hipoteca *tácita*, ". . . hace o surte efectos sin necesidad de acto constitutivo especial alguno, ni de inscripción. Es un residuo, mantenido, con fundamento, vigente, del antiguo régimen de clandestinidad hipotecaria." Roca Sastre, IV-2, *Derecho Hipotecario*, pág. 917 (Sexta Edición). Contrario a otras hipotecas legales, no necesita inscripción de título para su constitución por ser automática o *de lege*. La justificación de que se exceptúe de este requisito—según Roca Sastre, haciéndose eco de autores tales como Gayoso, Morell, Beraud y Lezón "[. . . descansa en que] existiendo ella de pleno derecho y por el solo ministerio de ley, no es lícito a nadie ignorar lo que ésta dispone, pues basta la publicidad que la ley lleva consigo. Por tratarse de una hipo-

teca que grava todos los inmuebles de la Nación no es posible prácticamente someterla a inscripción para cada uno de ellos; todos los propietarios, y cuantos quieran serlo, saben que debe pagarse la contribución impuesta sobre las fincas y no cabe exigir mayor publicidad. Serían enormes los gastos que supondría registrar estas hipotecas." *Op. cit.*, págs. 917–918.

Las disposiciones de ley que otorgan a la hipoteca legal tácita características de un "crédito singularmente privilegiado", [1] en lo que es aquí pertinente, son las siguientes: [1a]

Ley Hipotecaria, Art. 168:

"Se establece hipoteca legal:

.    .    .    .    .    .    .    .

5. En favor del Estado Libre Asociado de Puerto Rico y la correspondiente municipalidad sobre los bienes de los contribuyentes por el importe de las contribuciones de las tres últimas anualidades y la corriente no pagada, de los impuestos que graviten sobre ellos." (30 L.P.R.A. sec. 292.)

Código Político, Art. 315:

". . . La contribución que se impusiere por el corriente año económico y por los tres años económicos anteriores sobre cada finca o parcela de propiedad inmueble e, inclusive, sobre cualesquiera mejoras que en ella existan o que posteriormente se hicieren en la misma, constituirá el primer gravamen sobre dicha propiedad, el cual tendrá prelación sobre cualesquiera otros gravámenes sobre dicha finca o parcela de cualquier naturaleza que fuesen, ya pesen éstos sobre ella antes o después que el gravamen determinado por dicha contribución." (13 L.P.R.A. sec. 462.)

Código Civil, Art. 1823:

"Con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:

---

[1] Roca Sastre: *op. cit.*, pág. 810.

[1a] Mediante la Ley Núm. 125 del 23 de julio de 1974 todas las disposiciones de ley aquí citadas fueron enmendadas a los fines de aumentar el término del gravamen de tres (3) a cinco (5) años.

1. Los créditos a favor del Estado Libre Asociado de Puerto Rico, o de la correspondiente municipalidad, sobre los bienes de los contribuyentes, por el importe de las tres últimas anualidades, y la corriente no pagada, de las contribuciones que graviten sobre ellos." (31 L.P.R.A. sec. 5193.)

Ley de Contribuciones (Núm. 14 de 24 de agosto de 1933):

"Por la presente se declaran gravámenes preferentes a toda otra carga o gravamen por contribuciones o por cualquier otro concepto, los créditos hipotecarios y los créditos refaccionarios, con excepción de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente." (13 L.P.R.A. sec. 361.)

■ Y reafirmativo del principio rector de derecho inmobiliario de que toda hipoteca, aun las legales, tiene que ser inscrita para tener efectividad prospectiva frente a terceros, la Ley Núm. 14 de 24 de agosto de 1933 dispone:

"Las contribuciones impuestas por la Ley de Contribuciones sobre Ingresos de 1924, según ha sido enmendada, las contribuciones de rentas internas de todas clases, incluyendo las impuestas sobre alcoholes y bebidas embriagantes, la contribución sobre herencias y donaciones, la contribución denominada 'Impuesto de la Victoria', las cuotas de indemnizaciones a obreros, las primas al Fondo del Seguro del Estado y las compensaciones por accidentes del trabajo, así como los recargos, penalidades e intereses adicionales a dichas contribuciones, cuotas, primas o compensaciones, serán cobradas por el Secretario de Hacienda de Puerto Rico mediante el mismo procedimiento de apremio establecido por la ley para el cobro de contribuciones sobre la propiedad, pero el embargo que para el cobro de las anteriores contribuciones, cuotas, primas o compensaciones y sus recargos, penalidades e intereses se practique sobre los bienes inmuebles o derechos reales, *solamente tendrá preferencia desde la fecha de su inscripción en el registro y únicamente sobre gravámenes y cargas posteriores a dicha fecha.* Tan pronto cualesquiera de dichas contribuciones, cuotas, primas o compensaciones haya sido impuesta y sin que sea necesario dejar transcurrir el período que conceden las leyes para pagar ni proceder antes a embargar o intentar embargar bienes muebles, el Secretario de Hacienda de Puerto Rico podrá ordenar al colector o colectores de rentas internas

correspondientes que procedan a embargar y a anotar en el registro de la propiedad embargo preventivo sobre bienes inmuebles o derechos reales que figuren a favor del deudor, para asegurar el pago de la citada contribución, cuota, prima o compensación, más una cantidad razonable para los recargos, penalidades e intereses en que hubiere incurrido o pudiere incurrir el deudor. El registrador de la propiedad al recibir la notificación del embargo tomará nota de la misma al margen o a continuación de las inscripciones de las fincas o derechos reales del contribuyente; Disponiéndose, que si de conformidad con esta sección el Estado Libre Asociado de Puerto Rico se adjudicare para el cobro de dicha contribución, cuota, prima o compensación y sus recargos, una propiedad inmueble sujeta a un gravamen anterior, el dueño de tal gravamen podrá ejecutarlo contra dicha propiedad haciendo al Estado Libre Asociado de Puerto Rico parte demandada en el procedimiento que se siga, para lo cual el Estado Libre Asociado de Puerto Rico otorga su consentimiento." (13 L.P.R.A. sec. 365.) Énfasis suplido.

No obstante el derecho vigente antes reseñado, al declarar con lugar una acción sobre ejecución de hipoteca iniciada por la recurrente María Rosa Buxó—acreedora de un pagaré hipotecario al portador otorgado el 31 de diciembre de 1966 por la demandada Álvarez & Zavala, Inc., e inscrito en el Registro de la Propiedad desde el 27 de febrero de 1967, con un valor nominal de $47,952.07 y del cual se le adeuda la suma de $20,474.43 más los intereses, costas y honorarios de abogado—el Tribunal Superior, Sala de Caguas, dictaminó que las contribuciones adeudadas por un patrono (Álvarez & Zavala, Inc.) al seguro por desempleo establecido bajo la Ley de Seguridad de Empleo de Puerto Rico, Núm. 74 de 21 de junio de 1956, según enmendada (29 L.P.R.A. sec. 701 *et seq.*), constituía un gravamen preferente, garantizado por una hipoteca legal tácita, y que por lo tanto, la reclamación del interventor recurrido Secretario del Trabajo tenía prelación sobre dicha primera acreedora hipotecaria y demás embargos anotados previamente en el Registro sobre una finca propiedad de Álvarez & Zavala, Inc.

La sentencia se produjo al estipularse, en adición a la certeza del crédito hipotecario reclamado, la existencia de varios embargos anotados a favor de las siguientes personas jurídicas: Banco Crédito y Ahorro Ponceño por la suma de $131,184.83 de fecha 24 de febrero de 1970; Rodríguez Portela & Compañía por la suma de $30,000.00 de fecha 27 de febrero de 1970, quien intervino en primera instancia y es uno de los recurrentes; Banco de Ponce por la suma de $5,000 de fecha 3 de junio de 1970; y Negociado de Seguridad de Empleo a través de su interventor Secretario del Trabajo, por la suma de $18,356.51, de fecha 4 de junio de 1970. Fue basada en la tesis sustentada por el Secretario del Trabajo de que la Asamblea Legislativa estableció, por conducto de las subsecciones 9(c) y 9(e)(3) de la Ley de Seguridad de Empleo, una hipoteca legal tácita a favor del Estado por concepto de contribuciones por desempleo.

Tales disposiciones, en lo pertinente, leen:

"(c) *Orden de preferencia para reclamaciones:*—

Excepto lo dispuesto más adelante en este inciso, cualesquiera reclamaciones por concepto de contribuciones, intereses o penalidades, que se deban o acumulen bajo este Capítulo, serán pagaderas íntegramente con preferencia a cualesquiera otras reclamaciones incluyendo las reclamaciones por concepto de otras contribuciones o cantidades adeudadas al gobierno de Puerto Rico. Cuando existieren reclamaciones por contribuciones, intereses o penalidades y reclamaciones por salarios, contra el mismo patrono, el orden de preferencia, entre dichas reclamaciones y otras reclamaciones será el siguiente no obstante cualesquiera otras disposiciones consignadas en las leyes de Puerto Rico:

(1) aquellas reclamaciones por salarios, a excepción de remuneración a funcionarios ejecutivos o administrativos de corporaciones, hasta la suma de $250 para cada trabajador devengados dentro de seis meses del comienzo de los procedimientos, o de la fecha en que se adoptare un arreglo que no hubiere sido ordenado judicialmente para la distribución del capital de un patrono;

(2) aquellas reclamaciones por contribuciones, intereses o penalidades adeudadas o acumuladas bajo este Capítulo; y

(3) otras reclamaciones en orden de preferencia según se disponga por otras disposiciones legales.

.    .    .    .    .    .    .    .    .

(e) *Computaciones:*—

.    .    .    .    .    .    .    .    .

(3) Si un patrono dejare de pagar la cantidad que hubiere sido computada de acuerdo con esta sección, el Secretario podrá radicar en la sala del Tribunal Superior de aquella jurisdicción donde el patrono tenga su oficina principal, un certificado bajo su sello oficial haciendo constar el nombre del patrono, su dirección, la cantidad que le ha sido computada por concepto de contribuciones e intereses adeudados y la cantidad de cualesquiera penalidades impuestas y radicará copia de dicho certificado en la sala del Tribunal Superior de cualquier jurisdicción en que dicho patrono posea propiedad mueble o inmueble; debiendo los secretarios de las respectivas salas hacer constar en el libro de sentencias mediante Acta el nombre del patrono que figura en el certificado, la cantidad computada y adeudada de contribuciones, intereses o penalidades y la fecha en que dicho certificado fuere radicado. Cuando la referida Acta de Sentencia haya sido debidamente registrada, la cantidad del cómputo constituirá un gravamen sobre todos los derechos del patrono, legales o equitativos, con respecto a cualquier propiedad, mueble o inmueble, tangible o intangible situada en la jurisdicción donde el certificado o una copia del mismo hubiere sido radicada. Para determinar la prelación del gravamen así constituido, se seguirá el mismo orden de preferencia que dispone la subsec. (c) de esta sección. Ningún gravamen por concepto de contribuciones, intereses o penalidades será válido contra una persona que adquiera por compra propiedad mueble del patrono en el curso usual del negocio, de buena fe y sin tener conocimiento legal de la existencia de dicho gravamen. Dicho gravamen podrá ser ejecutado por los alguaciles del Tribunal Superior o previa notificación a dicho tribunal por cualquier funcionario o empleado del Negociado de Seguridad de Empleo que el Director designe sobre cualquier propiedad mueble o inmueble en la misma forma que una sentencia del Tribunal Superior debidamente registrada; Disponiéndose, que en la ejecución de dicho gravamen el funcionario o empleado designado tendrá los mismos poderes y facultades conferidos por ley a los alguaciles del Tribunal Superior, incluyendo la facultad de dili-

genciar mandamientos de embargo y ejecución de sentencias, embargando y vendiendo bienes muebles e inmuebles de los deudores en dichas sentencias, anunciando las subastas, haciendo las notificaciones y otorgando las escrituras de traspaso, actas, certificados de diligenciamiento y demás documentos que sean propios de estos actos y realizando cualquier otra actividad de las que corrientemente realizan los alguaciles del Tribunal Superior en casos de esta naturaleza. Disponiéndose, además, que cualquier embargo de bienes o ejecución de sentencia podrá hacerse con o sin incautación de dichos bienes, bastando para ello con que se notifique al deudor sobre los bienes embargados, dándole una relación escrita de éstos y notificándole que no podrá usar, enajenar, gravar, alterar, remover o de otro modo disponer de los mismos hasta tanto el tribunal provea lo contrario; y cualquier uso, gravamen, enajenación, remoción u otra disposición de dicha propiedad que se haga en ausencia de una orden judicial que lo permita, será considerada como absolutamente nula e ineficaz. En adición a cualquier otra penalidad provista en la sec. 714 de este título, el patrono que dejare de cumplir con esta disposición podrá ser castigado por desacato." (29 L.P.R.A. sec 709(c) y (e).)

■ Concluimos que el tribunal de instancia erró al estimar la existencia de una hipoteca legal tácita. Ni del lenguaje de las disposiciones transcritas, ni de su historial legislativo (²) se desprende una hipoteca legal tácita análoga a la que pesa, *ex proprio vigore,* por contribuciones territoriales sobre todo bien inmueble en nuestro país en virtud de la Ley Hipotecaria y demás leyes mencionadas.

■ Primeramente, el orden de preferencia que establece la subsección 9(c) se refiere a reclamaciones, no a gravámenes. Esto significa que la reclamación del Secretario goza de prioridad (³) respecto a cualesquiera otros acreedores no ase-

---

(²) Hemos examinado cuidadosamente las versiones originales y los debates habidos en torno a la Ley especial que nos ocupa, y sus sucesivas enmiendas, y no existe el más mínimo asomo de que la Asamblea Legislativa intentara darle a la misma el alcance que le dió el tribunal sentenciador.

(³) Es interesante notar que la Sec. 9(c) de la Ley Núm. 139 de 26 de junio de 1968—Ley de Beneficios por Incapacidad—sigue un texto aná-

gurados pero no frente a acreedores cuyo crédito consta en hi-poteca previamente inscrita o mediante embargo debidamente anotado.

■ Su lenguaje es con referencia a contribuciones en términos generales, lo cual no es suficiente para abarcar a las contribuciones territoriales, las cuales han recibido históricamente un tratamiento especial, de carácter privilegiado, y están protegidas por una garantía real en orden a los fundamentos expuestos al inicio de esta opinión. Frente al principio de hermenéutica de que las contribuciones no constituyen un gravamen tácito sobre determinada propiedad a menos que el estatuto lo diga expresamente no podemos por *fiat judicial* reconocer hipotecas donde no las hay; *Banco Popular* v. *Ramírez*, 57 D.P.R. 618 (1940) y *Martínez* v. *Sancho Bonet, Tes.*, 53 D.P.R. 553 (1938), máxime que cuando el legislador ha establecido una hipoteca legal tácita, se ha expresado en términos claros e inequívocos.

En segundo lugar, la regla general de que toda hipoteca legal creada en protección de ciertas personas e intereses requieren para su eficacia, que se constituyan mediante la correspondiente inscripción—Art. 159, Ley Hipotecaria (30 L.P.R.A. sec. 283)—milita contra el dictamen del tribunal de instancia. (⁴)

■ En tercer lugar, el texto de la subsección 9 (e) (3) de

---

logo al de la Sec. 9 (c) que nos ocupa, pero su título se refiere a *Prioridad* en el Pago de las Contribuciones. (11 L.P.R.A. sec. 209.)

(⁴) Compárese el siguiente texto del Art. 3 de la Ley Núm. 111 de 22 de junio de 1961, en que el legislador reafirma el principio de inscripción registral y lo excepcional de un crédito hipotecario:

"(b) Los salarios que devenguen los trabajadores de la obra gozarán de preferencia absoluta, en cuanto al pago, sobre las demás deudas del contratista, a excepción de los créditos hipotecarios sobre determinados bienes inmuebles o muebles o derechos reales del deudor, inscritos en el Registro de la Propiedad con anterioridad a la fecha en que el salario hubiere sido devengado, y a excepción de las contribuciones que el contratista pueda adeudar al Estado Libre Asociado o a sus municipios." (29 L.P.R.A. sec. 197.)

la ley no da margen a la interpretación de la sala sentenciadora. Crea un gravamen *sui generis* que surge cuando el Acta de Sentencia ha sido debidamente registrada. Para determinar la prelación de este gravamen así constituido su lenguaje nos remite a la subsección 9 (c), la cual no tiene otro efecto que reafirmar el orden de preferencia respecto a cualesquiera otras reclamaciones. Su propósito es proveer un método rápido de obtener una sentencia, otorgar un carácter preferente al crédito del Secretario, y diligenciar rápidamente su ejecución. Aparentemente, la inclusión del vocablo "gravamen", el cual de ordinario implica la existencia de un derecho real, genera cierta confusión; ahora, en el contexto de la ley y a la luz de los principios que informan nuestro derecho inmobiliario nos vemos compelidos a resolver que dicho crédito preferente no recae o afecta automáticamente bienes inmuebles y sólo si gana acceso al Registro de la Propiedad podía con carácter prospectivo, adquirir preferencia sobre otros créditos y contribuciones no territoriales.

Finalmente, aun cuando reconocemos la importancia de la Ley de Seguridad de Empleo, no estamos autorizados a ignorar los principios cardinales de nuestro derecho inmobiliario registral de publicidad y especificación de gravámenes en cada una de las fincas afectadas por las mismas, destruyendo la certeza y seguridad de los créditos hipotecarios y por embargos que encuentran cabida registral.

*Se dictará sentencia modificando la del Tribunal Superior, Sala de Caguas, fechada 3 de diciembre de 1974, conforme los pronunciamientos previamente expuestos.*